**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 17 B 25014 |
| ADRIENNE L. BUTLER, | ) | |
| | ) | |
| Debtor. | ) | Chapter 13 |
| | ) | |
| _____ | ) | |
| | ) | |
| ADRIENNE L. BUTLER AND | ) | |
| JUAN J. JACKSON, | ) | |
| | ) | Adv. No. 22 A 189 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | Judge David D. Cleary |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

Adrienne L. Butler ("Butler" or "Plaintiff") and Juan J. Jackson ("Jackson") filed an

adversary proceeding against the City of Chicago ("City"). In their amended complaint

("Amended Complaint"), Butler and Jackson sought relief on four causes of action brought under

the following sections of the Bankruptcy Code: 11 U.S.C. §§ 362(a)(2), (a)(4) and (a)(6) and

542. The City filed a motion to dismiss ("Original Motion") all four counts of the Amended

Complaint. After the parties briefed the Original Motion, the court issued an opinion ("Original

Opinion") granting it.

Plaintiffs appealed. The District Court affirmed in part and reversed in part, remanding

the case for proceedings consistent with its opinion ("District Court Opinion"). The District

Court Opinion affirmed the dismissal of Count IV, which was the only count brought by

Jackson, and reversed the dismissal of Counts I, II and III, permitting Butler to go forward with her adversary proceeding rather than requiring a contested matter.

Following remand, this court set a status hearing on the adversary proceeding.  The City then filed a motion to dismiss ("Second Motion").  After Butler filed a notice of objection, the court entered a briefing schedule.  Butler filed a response ("Response") and the City filed a reply ("Reply").  The court then held oral argument.

Having reviewed the papers submitted and considered the arguments of the parties, the court will deny the Second Motion.

## I.   JURISDICTION

The court has subject matter jurisdiction under 28 U.S.C. § 1334 and the district court's Internal Operating Procedure 15(a). Venue is proper under 28 U.S.C. § 1409(a).

## II.   BACKGROUND

In resolving a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the court considers well-pleaded facts and the reasonable inferences drawn from them in the light most favorable to the plaintiff.  *See Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010).  Every allegation that is well-pleaded by a plaintiff is taken as true in ruling on the motion.  *See Berger v. Nat'l Collegiate Athletic Ass'n*, 843 F.3d 285, 289-90 (7th Cir. 2016).  For purposes of deciding this motion, the court accepts well-pleaded allegations from the Amended Complaint as true and takes judicial notice of papers filed on the docket for this proceeding as well as in the bankruptcy cases filed by Butler and Jackson.

On March 31, 2017, Jackson filed for relief under chapter 13 of the Bankruptcy Code, commencing case number 17 B 10409 (the "Jackson 2017 Case").  The court confirmed Jackson's chapter 13 plan on July 11, 2017.

On the day he filed the Jackson 2017 Case, Jackson was the registered owner of a 2004 GMC Yukon XL ("Yukon").  He listed the Yukon on Schedule B.

Jackson and Butler lived together as boyfriend and girlfriend.  Jackson gave Butler permission to drive the Yukon back and forth to work and school and to retain possession of the Yukon on a daily basis.

On August 17, 2017, the City impounded the Yukon for parking tickets and claimed a possessory lien against it.  The next day, Jackson demanded release of the Yukon.  The City had notice of the Jackson 2017 Case because he had informed it of the filing.  The City had filed a proof of claim in his case on April 3, 2017.

The City refused to return the Yukon unless Butler paid her parking tickets.

On August 21, 2017, Butler filed for relief under chapter 13 (the "Butler 2017 Case").  She did not list an interest in the Yukon on Schedule B.  In answer to Question 10 on her SOFA, which asks whether any of her property was repossessed or seized within one year before filing for bankruptcy, she checked "no."  She listed the City on Schedule F with a claim against her in the amount of $2,500 for "[t]ickets."

Shortly after Butler filed the Butler 2017 Case, she and Jackson demanded that the City release the Yukon.  At the time of their demand, Butler informed the City of her bankruptcy filing and that Jackson had granted permission to her to receive, possess and use the Yukon on a daily basis.

In response to Butler and Jackson's demand for release, the City insisted on payment of a prepetition debt in the amount of $2,600.  The City neither sought nor obtained approval from the bankruptcy court for its refusal to release the Yukon, nor for its demand of payment of a prepetition debt.

Butler and Jackson paid the City $2,600.  Butler contributed $1,000 to this payment and Jackson paid the balance.  The City's actions caused Butler to lose wages and caused both Plaintiffs to suffer emotional distress.

Butler filed a motion to voluntarily dismiss the Butler 2017 Case two days after filing her petition.  On August 30, 2017, the court granted her motion and dismissed the case.  After the chapter 13 Trustee filed his final report and account, the court closed the Butler 2017 Case on October 3, 2017.

The chapter 13 Trustee filed a motion to dismiss the Jackson 2017 Case for failure to make plan payments on April 4, 2018.  The court granted the Trustee's motion on April 24, 2018, and dismissed his case.  After the chapter 13 Trustee filed her final report and account, the court closed the Jackson 2017 Case on June 26, 2018.

Later, with no bankruptcy case pending, Butler and Jackson filed a complaint commencing this adversary proceeding on November 26, 2022.  Less than two weeks later, Butler filed a new bankruptcy case, case number 22 B 14184 (the "Butler 2022 Case"), seeking relief under chapter 13 of the Bankruptcy Code.  On December 30, 2022, the City filed a motion to reopen the Butler 2017 Case.  The motion was granted in part, reopening the Butler 2017 Case and stating that a separate order would be entered reassigning that case to the undersigned.  The Butler 2017 Case again was closed on January 20, 2023.

The Butler 2022 Case was assigned to a different judge, and that court confirmed Butler's chapter 13 plan on March 3, 2023.  Less than a year later, the chapter 13 Trustee filed a motion to dismiss for failure to make plan payments.  The court granted that motion on November 17, 2023, and the Butler 2022 Case was closed shortly thereafter.[1]

---

[1] When she filed the Butler 2022 Case on December 8, 2022, Butler answered "no" when asked in Question 9 on her Statement of Financial Affairs whether she was a party in any lawsuit within one year before filing for bankruptcy,

On December 30, 2023, Butler filed case number 23 B 17467 (the "Butler 2023 Case"), again seeking relief under chapter 13 of the Bankruptcy Code.  The court confirmed her chapter 13 plan on March 29, 2024.  About four months later, Butler filed a notice of voluntary conversion to chapter 7.  The chapter 7 trustee filed a report of no distribution on November 12, 2024,[2] and the court entered Butler's discharge the same day.  The Butler 2023 Case was closed on December 4, 2024.

## III.    DISCUSSION

### A.  The Second Motion is not an improper successive motion to dismiss.

In her Response, Butler argues that the Federal Rules of Civil Procedure do not permit the repeated filing of motions to dismiss:

> (2) *Limitation on Further Motions*. Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion.

Fed. R. Civ. P. 12(g)(2).

Butler's argument that the Second Motion is an improper successive motion to dismiss is flawed for two reasons.  First, in the Original Motion, the City sought dismissal of the Amended Complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  Therefore, this argument

---

even though she had filed this adversary proceeding just twelve days earlier.  (Butler 2022 Case, EOD 1.)  Butler filed an amended Statement of Financial Affairs on February 27, 2023, and disclosed the proceeding against the City.  (*Id.*, EOD 25.)  Similarly, Butler did not list any claim relating to this adversary proceeding in Schedule B (*Id.*, EOD 1.)  She filed an amended Schedule B on February 27, 2023, disclosing a claim against the City and valuing it at $1,200.  (*Id.*, EOD 24.)  She filed an amended Schedule C on the same date, claiming "Adversary Case against City of Chicago Butler v City of Chicago 22 AP 00189 (Attorney for Debtor is Ross Briggs)" as fully exempt at the $1,200 valuation.

[2] The chapter 7 trustee in the Butler 2023 Case appeared before this court on November 6, 2024, and stated that "based upon the Debtor's valuation and exemption claim, I do not believe there is value in this cause of action for the benefit of creditors….  At $1,200 there is nothing for me to administer."

was not "omitted" from the City's earlier motion.  The court did not address the City's Rule

12(b)(6) arguments in deciding the Original Motion's request to dismiss Counts I through III:

> Among the reasons the City seeks dismissal of Counts I, II and III is that it did not violate the automatic stay, and therefore no claim for relief is stated.  *Before the court can consider whether Butler has stated a claim for relief*, however, the court must determine whether that claim is properly before the court.

Original Opinion, p. 5 (emphasis added).  Likewise, Butler's law of the case argument is

confused.  The court did not adjudicate the City's contention that the Amended Complaint was

deficient for failure to a state a claim.

The court decided that Counts I, II and III were not properly before it, because those

claims for relief should have been brought by contested matter and not by adversary proceeding.

The District Court reversed this decision and remanded for proceedings consistent with its

opinion, permitting the adversary proceeding to continue in this case.

Therefore, to the extent the Second Motion seeks dismissal for Butler's "failure to state a

claim for relief," it is not barred by Rule 12(g)(2) because it was not omitted from the Original

Motion.

Second, the prohibition on successive motions in Rule 12(g)(2) specifically excepts those

motions included in Rule 12(h)(2) or (3):

> (h) **Waiving and Preserving Certain Defenses**.
>
> > (1) *When Some Are Waived*. A party waives any defense listed in Rule 12(b)(2)-(5) by:
> >
> > > (A) omitting it from a motion in the circumstances described in Rule 12(g)(2); or
> > >
> > > (B) failing to either:
> > >
> > > > (i) make it by motion under this rule; or
> > > >
> > > > (ii) include it in a responsive pleading or in an amendment allowed by Rule 15(a)(1) as a matter of course.

(2) *When to Raise Others*. Failure to state a claim upon which relief can be granted, to join a person required by Rule 19(b), or to state a legal defense to a claim may be raised:

(A) in any pleading allowed or ordered under Rule 7(a);

(B) by a motion under Rule 12(c); or

(C) at trial.

(3) *Lack of Subject-Matter Jurisdiction*. If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.

Fed. R. Civ. P. 12(h).  Therefore, to the extent the Second Motion seeks dismissal for lack of subject matter jurisdiction, which falls under Rule 12(b)(1), it is not precluded by Rule 12(g)(2) and can be decided "at any time[.]"

In support of her contention that the City is engaging in an "obvious circumvention of Rule 12(g)(2)[,]" and that its Rule 12(b)(1) arguments are actually an attack on her statutory standing, Butler cites a decision of the Third Circuit:

In *Leyse v. Bank of America*, 804 F.3d 316, 320 (3d Cir. 2015), the Third Circuit held that a successive Rule 12 motion to dismiss on statutory standing grounds was improper.  The court rejected the movant's argument that the second motion qualified for the Rule 12(h)(3) exception which exempted only motions to dismiss for lack of subject matter jurisdiction.

Response, p. 2.

In *Leyse*, the panel found that a motion to dismiss on the grounds that the plaintiff lacks statutory standing "is effectively the same as a dismissal for failure to state a claim, and a motion to dismiss on this ground is brought pursuant to Rule 12(b)(6), rather than Rule 12(b)(1)." *Leyse v. Bank of Am. Nat. Ass'n*, 804 F.3d 316, 320 (3d Cir. 2015) (quotation omitted).  The *Leyse* panel determined that because the defendant's second motion to dismiss, in which it raised the question of statutory standing, was neither a Rule 7(a) pleading, nor a motion under Rule 12(c), nor a motion raised at trial, it was not properly considered.  *Id.* at 320-21.

7

But, even if the court accepts Butler's argument that what the City describes as a lack of

subject matter jurisdiction is actually a lack of statutory standing, and therefore a motion to

dismiss for failure to state a claim, *Leyse* is not binding precedent.  The Seventh Circuit has ruled

directly on the question of successive motions to dismiss under Rule 12(b)(6) and come to a

different conclusion from *Leyse* – and that precedent is binding on this court.[3]

> [Plaintiff] contends that the defendants waived the statute-of-limitations defense
> by not raising it in their first motion to dismiss. This argument is based on a
> misreading of Rule 12(g)(2) of the Federal Rules of Civil Procedure. That rule
> requires litigants to consolidate certain dismissal arguments in a single motion,
> but it also contains some important exceptions…. The exception at issue here—
> contained in Rule 12(h)(2)—makes it clear that a litigant need not consolidate all
> failure-to-state-a-claim arguments in a single dismissal motion[.]
>
> The district court noted that a motion to dismiss on statute-of-limitations grounds
> qualifies as a motion to dismiss for failure to state a claim.  As such, the court
> held that the Rule 12(h)(2) exception applied and the defendants' failure to raise
> the statute-of-limitations defense in their earlier Rule 12(b)(6) motion was not a
> waiver.
>
> This ruling was sound. Rule 12(g)(2) does not prohibit a new Rule 12(b)(6)
> argument from being raised in a successive motion. Stated differently, Rule
> 12(h)(2) specifically excepts failure-to-state-a-claim defenses from the Rule 12(g)
> consolidation requirement.

*Ennenga v. Starns*, 677 F.3d 766, 772–73 (7th Cir. 2012) (citations omitted).

Therefore, whether the City's argument that this court lacks subject matter jurisdiction

because Butler does not have standing is properly considered under Rule 12(b)(1), as the City

contends, or Rule 12(b)(6), as Butler asserts, is a moot point.  Under *either* subsection of Rule

12(b), the City can raise the argument in a successive motion to dismiss.

For all of the reasons stated above, the Second Motion is not an improper successive

motion to dismiss.

---

[3] *Leyse* recognized that the Seventh Circuit would have reached a different conclusion, and "respectfully
disagree[d]."  *Leyse*, 804 F.3d at 321 (citing *Ennenga*).

**B. The court does not lack subject matter jurisdiction over the Amended Complaint**

The City's first argument is that Counts I, II and III should be dismissed for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), made applicable by Fed. R. Bankr. P. 7012. It contends that the allegations in the Amended Complaint do not establish that Butler has standing to assert violations of the automatic stay with respect to the Yukon.

The United States Constitution limits the "judicial Power" of federal courts to "Cases" and "Controversies." U.S. Const. Art III, § 2, cl. 1. "[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Plaintiff bears the burden of establishing standing. *See Reid L. v. Ill. State Bd. of Educ.*, 358 F.3d 511, 515 (7th Cir. 2004).

Plaintiff alleged in the Amended Complaint that Jackson gave her permission "to drive the motor vehicle back and forth to work and school and to retain possession of the motor vehicle on a daily basis." Amended Complaint, ¶ 8. She alleged further that her permissive use of the Yukon was an interest that became property of her estate. "Plaintiff Adrienne L. Butler's right to possess and use the motor vehicle on a daily basis, as granted by Plaintiff Juan J. Jackson, was property of Plaintiff Adrienne L. Butler's bankruptcy estate[.]" *Id.*, ¶ 13.

In the Schedule B that she filed in the Butler 2017 Case,[4] however, Plaintiff stated that she had no legal or equitable interest in any vehicle. And, in her Statement of Financial Affairs, she answered "no" when asked whether any of her property was seized within one year before filing bankruptcy, even though the City impounded the Yukon four days before she filed her petition. The City argues that Butler is bound by these admissions and that the principles of

---

[4] The court may take judicial notice of its own docket. *See In re Prate*, 634 B.R. 72, 75 n.1 (Bankr. N.D. Ill. 2021). Taking judicial notice of the contents of the docket does not trigger the application of Fed. R. Civ. P. 12(d). *See Walden Inv. Group, LLC v. First Nations Bank* (*In re Montemurro*), 580 B.R. 490, 495 (Bankr. N.D. Ill. 2017).

judicial estoppel therefore preclude her from pursuing a claim for violation of the automatic stay with respect to the Yukon. *See Cannon-Stokes v. Potter*, 453 F.3d 446, 448 (7th Cir. 2006) ("All six appellate courts that have considered this question hold that a debtor in bankruptcy who denies owning an asset, including a chose in action or other legal claim, cannot realize on that concealed asset after the bankruptcy ends").

The City's argument that Butler lacks standing has no application to Counts I and III of the Amended Complaint. Count I is brought under 11 U.S.C. § 362(a)(2), which prohibits "the enforcement, **against the debtor or against property of the estate**, of a judgment obtained before the commencement of the case[.]" 11 U.S.C. § 362(a)(2) (emphasis added.) Count III is brought under 11 U.S.C. § 362(a)(6), which stays "any act to collect, assess, or recover a claim **against the debtor** that arose before the commencement of the case[.]" 11 U.S.C. § 362(a)(6) (emphasis added). Butler has standing to enforce the automatic stay with respect to acts taken against herself as a bankruptcy debtor, regardless of whether she has an interest in the Yukon that was property of her estate.

Count II requires a different analysis, because it is brought under 11 U.S.C. § 362(a)(4), which prohibits "any act to create, perfect, or enforce any lien **against property of the estate**[.]" 11 U.S.C. § 362(a)(4) (emphasis added). This subsection does not contain a prohibition against acts against a debtor, only against property of the estate.

At oral argument before this court and in her Response, Plaintiff asserted that she was acting as a bailee. *See Berglund v. Roosevelt Univ.*, 310 N.E.2d 773, 775 (Ill. App. Ct. 1974) ("Bailment is defined as the rightful possession of goods by one who is not an owner."). The City cited case law for the proposition that "property held by a debtor as a bailee or agent is not property of a debtor's bankruptcy estate." *In re Haase*, 224 B.R. 673, 676 (Bankr. C.D. Ill.

10

1998).  Moreover, argued the City, Butler's interest was only in the "occasional use" of the Yukon, and she has no basis for asserting that "occasional use" of a vehicle is property of the estate.

The Seventh Circuit has held, however, that "every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of § 541." *Matter of Yonikus*, 996 F.2d 866, 869 (7th Cir. 1993), *abrogated on other grounds by Law v. Siegel*, 571 U.S. 415 (2014).  *See also Matter of Carousel Int'l Corp.*, 89 F.3d 359, 362 (7th Cir. 1996) ("When the estate stakes a claim, the property of the estate is just that: a claim of ownership.").

By alleging that she had been granted permission to drive the Yukon to work and school and to retain possession of it on a daily basis, Butler satisfied her burden of establishing standing to bring a claim for relief based on that permissive and temporary possessive interest becoming property of her estate.  The Yukon itself did not become property of Butler's estate, only the permissive use of the Yukon that Jackson granted to her.  At this stage of the proceedings, that is all that is required.

Butler's failure to list her "possessory" or "occasional use" interest on her schedules does not compel a different result.  The court is not convinced that not listing the Yukon in Schedule B precludes any interest Butler has in that car from becoming property of her estate.[5]  "[A] debtor's failure to list property in the debtor's bankruptcy schedules is not dispositive as to whether the property constitutes property of the estate.  The determining factor is the nature of the debtor's interest in the property as of the petition date." *In re Jocelyn*, 574 B.R. 771, 773

---

[5] Other admissions that Butler made under oath may have different consequences.  In the Butler 2022 Case, Butler filed amended Schedules B and C valuing these causes of action at $1,200 and claiming them as exempt.  The chapter 7 trustee appeared before this court on November 6, 2024, and represented that based upon the Debtor's valuation, she would not administer these causes of action for the benefit of creditors.

(Bankr. M.D. Fla. 2017) (footnotes omitted). *See also Froshiesar v. Babij*, No. CV-02-449-ST, 2002 WL 31972189, at *5 (D. Or. Dec. 11, 2002) ("Even though not listed in the bankruptcy schedules, all claims become property of the bankruptcy estate[.]"). Butler alleged an interest in the Amended Complaint.

At this stage, the pleading before the court is sufficient for Butler to establish standing to bring a claim for a violation of the automatic stay with respect to property of her bankruptcy estate. The Second Motion will be denied to the extent the City seeks dismissal under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.

C. **The Amended Complaint states a claim for relief in Counts I, II and III**

1. **Standard for a motion to dismiss for failure to state a claim**

To defeat a motion to dismiss under Fed. R. Civ. P. 12(b)(6), made applicable in bankruptcy proceedings by Fed. R. Bankr. P. 7012, a complaint must describe the claim in enough detail to give notice to the defendant. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In addition, the claim to relief must be "plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint need only offer "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2).

In Counts I, II and III, Butler seeks relief based on the City's alleged violation of three sections of 11 U.S.C. § 362:

> (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of-- …

12

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title; …

(4) any act to create, perfect, or enforce any lien against property of the estate; [and] …

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title[.]

Section 362(k) provides the statutory basis for seeking relief from the court when there is a violation of the automatic stay: "[A]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."  11 U.S.C. § 362(k)(1).

### 2.  The Amended Complaint states a claim for relief in Count I

The City asserts that Count I should be dismissed because the Amended Complaint fails to allege a plausible claim for relief that it violated the stay of "the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title[.]"

First, the City contends generally that Count I "simply recite[s] the statutory language and fail[s] to allege plausible claims."  Second Motion, ¶ 28.  *See Jones v. City of Chicago, Illinois* (*In re Jones*), 657 B.R. 238, 259 (Bankr. N.D. Ill. 2024).  While the allegations within Count I are sparse, Count I also includes all of the paragraphs that preceded it.  Therefore, as the court will discuss below, the Amended Complaint goes beyond mere recitation of the statutory language.

Second, the City argues that pursuant to a Supreme Court ruling, the automatic stay prohibits "*affirmative acts that would disturb the status quo* of estate property as of the time when the bankruptcy petition was filed."  *City of Chicago, Illinois v. Fulton*, 592 U.S. 154, 158,

13

(2021) (emphasis added).  Therefore, "something more than merely retaining power [over property] is required" in order to find a violation of the automatic stay.  *Id.* at 159.

Although the *Fulton* Court was presented only with the question of whether the City had violated § 362(a)(3), the word "stay" precedes every one of the subsections of § 362(a).  The City concludes that, as a result, "the function of each subsection is to prevent alteration of the pre-petition status quo."  Motion, ¶ 30.  *See, e.g., Stuart v. City of Scottsdale* (*In re Stuart*), 632 B.R. 531, 542 (B.A.P. 9th Cir. 2021) ("the City did not do anything to enforce the State Court Judgment"), *aff'd*, No. 21-60063, 2023 WL 5011739 (9th Cir. Aug. 7, 2023); *Kipps v. Kipps* (*In re Kipps*), No. 5:19-01662-MJC, 2022 WL 997795, at *8 (Bankr. M.D. Pa. Mar. 31, 2022) ("Because there is no evidence that there was a change in the status quo, the Court finds that there was no violation of § 362(a)(1) and (2).") (footnote omitted); *Margavitch v. Southlake Holdings, LLC* (*In re Margavitch*), No. 5:19-05353-MJC, 2021 WL 4597760, at *8 (Bankr. M.D. Pa. Oct. 6, 2021) ("some action to enforce a pre-petition judgment must be taken in order to violate subsection (a)(2)").

For purposes of deciding the Second Motion, the court will assume that the City's position is correct and that *Fulton's* holding applies to § 362(a)(2).[6]  The question with respect to

---

[6] The City argues that "[s]ince *Fulton*, lower courts that have been called upon to decide whether another section of § 362(a) may impose a duty to take an affirmative act, instead of merely 'stay,' have held that it does not."  Motion, ¶ 30.  Although the court accepts that argument for purposes of deciding the Second Motion, the court acknowledges that the Second Motion ignores another judge's decision on a motion to dismiss in a similar adversary proceeding:

> The City's expansive reading of *Fulton* is based on the applicability of the words "act" and "stay", two out of three terms that helped the Court arrive at its interpretation of section 362(a)(3) in *Fulton*, to other provisions of the automatic stay under section 362(a). It argues that the Court's interpretation of the two words must apply with full force to other provisions of the automatic stay. As a result, it argues that violation of the automatic stay under provisions other than section 362(a)(3), also requires an affirmative act which the passive retention of the estate property is not.

> To be clear, however, the Court in *Fulton*, interpreted the *combination* of three key terms "act", "stay", and "to exercise control over." The phrase "to exercise control" is unique to section 362(a)(3) and does not appear in nor apply to other automatic stay provisions. The City's argument therefore misses the context within which these terms were used.

14

Count I, therefore, is whether Butler plausibly alleged an alteration of the status quo that the court could reasonably infer to be the enforcement, against the debtor or against property of the estate, of a prepetition judgment.  In fact, she did.

In the Amended Complaint, Butler alleged that while the City was holding the Yukon:

14. In response to plaintiffs' demand for release, defendant City demanded, as a condition for release of the motor vehicle, payment from plaintiffs on pre-petition debt owed to defendant City in the amount of $2,600.00..  Defendant City did not seek nor obtain approval from this Court for its refusal to release the motor vehicle, nor to demand payment from plaintiffs on their pre-petition debt.

15. As a result of Defendant City's effort to coerce and extort payment from plaintiffs on pre-petition debt as a condition for release of the motor vehicle, plaintiffs involuntarily paid defendant City $2,600.00 to secure the release of the motor vehicle.  Plaintiff Adrienne L. Butler contributed $1,000 to this payment; Plaintiff Juan J. Jackson paid the balance.

At all relevant times Defendant City of Chicago willfully violated 11 U.S.C. § 362(a)(2) by enforcing a judgment of vehicle impoundment against Plaintiff Adrienne Butler after the filing of a Chapter 13 bankruptcy.

Amended Complaint, ¶¶ 14, 15, 19.

"Enforcement is defined as the act or process of compelling compliance with a law, mandate, command, decree, or agreement." *Margavitch*, 2021 WL 4597760, at *8 (quotation omitted).  In its Reply, the City argues that "Butler does not allege any 'judgment' let alone an 'impoundment judgment' in the Amended Complaint."  Reply, ¶ 24.  But she does allege in paragraph 9 that "Defendant City had impounded the motor vehicle for parking tickets and claimed a possessory lien against the motor vehicle purportedly pursuant to the common law and/or the authority granted to it" under the Municipal Code of Chicago.

---

*In re Cordova*, 635 B.R. 321, 342–43 (Bankr. N.D. Ill. 2021).  The City writes in its Reply that it "respectfully disagrees with the holding in *Cordova*."  Reply, ¶ 25.

15

When the City impounds a vehicle as a result of unpaid fines for violation of its traffic code, "the outstanding ticket debt becomes a lien on the vehicle[.]" *Matter of Mance*, 31 F.4th 1014, 1020 (7th Cir. 2022).  Binding precedent from the Seventh Circuit tells us that this "possessory lien on impounded vehicles is properly classified as judicial[.]" *Id.* at 1016.  In *Mance*, the panel rejected the City's contention that its impoundment lien is a statutory lien, instead finding that it is based on prior adjudications and money judgments:

> [W]e do not think we can ignore all the prior legal process that must occur before the City's possessory lien arises. The lien is "obtained by ... other legal or equitable process or proceeding," 11 U.S.C. § 101(36), in that the lien arises from and is based upon the prior quasi-judicial adjudications and money judgments that determine the lien's validity and amount. The lien is judicial and avoidable in bankruptcy.

*Id.* at 1021.  *See also In re Fulton*, 926 F.3d 916, 930–31 (7th Cir. 2019), *vacated on other grounds*, 592 U.S. 154 (2021) (the City's final determination of liability is a "money judgment").

Based on the allegations in the Amended Complaint that the City demanded – and received – payment of the prepetition tickets it had issued before it would release the Yukon from the impoundment that was a linchpin of its possessory lien, and the legal authority that this possessory lien is a judicial lien based on a money judgment, the court can draw the reasonable inference that the City took an affirmative action to enforce a prepetition judgment against Butler.

For all of the reasons stated above, the court finds that the Amended Complaint states a cause of action under 11 U.S.C. § 362(a)(2).  The Second Motion will be denied as to Count I.

### 3.  The Amended Complaint states a claim for relief in Count II

The City asserts that Count II should be dismissed because the Amended Complaint fails to allege a plausible claim for relief that it violated the stay of "any act to create, perfect, or enforce any lien against property of the estate[.]"

16

As with Count I, the City first contends generally that Count II "simply recite[s] the statutory language and fail[s] to allege plausible claims." Second Motion, ¶ 28. *See Jones*, 657 B.R. at 259. And again, as with Count I, the allegations in the entirety of the Amended Complaint go beyond mere recitation of the statutory language.

Second, the City argues with respect to Count II that this court should interpret *Fulton* to require that the Amended Complaint allege an affirmative act that alters the status quo. The court will again assume that the City's position is correct and that *Fulton's* holding applies to § 362(a)(4). The question, therefore, is whether Butler plausibly alleged an alteration of the status quo that the court could reasonably infer to be an act to create, perfect, or enforce any lien against property of the estate.

A claim for relief under § 362(a)(4) requires an act against property of the estate. As discussed above in Section B, Butler had an interest in the Yukon which, for purposes of deciding the Second Motion, the court determined to be property of the estate.

The court will also assume, for purposes of deciding the Second Motion, that § 362(a)(4) could be applicable even though Butler did not list this "permissive use" of the Yukon in her schedules. Whether her "permissive use" was an interest that became property of her bankruptcy estate is a factual question that can be resolved through discovery or at trial. For purposes of the Second Motion, however, the allegations are sufficient for the court to make the reasonable inference that the interest alleged in the Amended Complaint would support a claim for relief under § 362(a)(4).

The remaining question for the court to determine is whether the Amended Complaint plausibly alleged that the City took an act to create, perfect, or enforce any lien against Butler's interest in the Yukon. The City has a possessory lien on impounded vehicles. *See* Municipal

Code of Chicago § 9-92-080(f) ("Any vehicle impounded by the City or its designee shall be subject to a possessory lien in favor of the City in the amount required to obtain release of the vehicle."). *See generally Mance*, 31 F.4th 1014.

In the Amended Complaint, Butler alleged that she demanded the release of the Yukon. The City refused to release it unless Butler and Jackson paid the full amount of their prepetition debt. Amended Complaint, ¶¶ 13-14. These allegations support a plausible claim for relief that the City acted to enforce its possessory lien.

> The Complaint alleges that the City continued to retain the Plaintiffs' vehicles even after the Plaintiffs filed for bankruptcy. It further alleges that the City demanded an upfront payment as a precondition for release of the vehicles and retained them to perfect its lien.
>
> These allegations, if taken as true, are sufficient to raise plausible claims for violation of sections 362(a)(4) and (6). Whether the City can defeat these allegations on the merits, on the facts attendant thereto or on a defense under section 362(b) or otherwise, is not before the court today for the purpose of the Motion.

*In re Cordova*, 635 B.R. 321, 349 (Bankr. N.D. Ill. 2021).

The City argues that the court's analysis in *In re Rogers* compels a different result. But, although the facts in *Rogers* appear similar to the allegations before the court today, they differ on one crucial point. The creditor in *Rogers* did not hold a possessory lien, and the *Rogers* court took pains to distinguish cases in which a creditor *did* hold a possessory lien, as the City did:

> When a lien is possessory, some courts have considered that mere retention of collateral may amount to enforcement of the lien. *See, e.g., In re Shannon*, 590 B.R. 467, 479 (Bankr. N.D. Ill. 2018), *vacated and remanded on other grounds by Fulton* ("A possessory lien may be enforced by the retention of possession."); *see also In re Cordova*, 635 B.R. 321, 349 (Bankr. N.D. Ill. 2021) (debtors plausibly stated a claim for relief under § 362(a)(4) by alleging that city retained debtors' impounded vehicles to perfect its liens). But TitleMax holds a non-possessory lien; possession is required neither to enforce nor to perfect its lien.

*Rogers v. TitleMax of Wisconsin, Inc.* (*In re Rogers*), No. 22-2129, 2023 WL 5354417, at *5 n.2 (Bankr. E.D. Wis. Aug. 21, 2023). *See also Jackson v. Paintmaster Premiere LLC* (*In re*

18

*Jackson*), No. 24-5021, 2024 WL 4806395, at *2 (Bankr. E.D. Ky. Nov. 15, 2024) ("Since there is no dispute Defendant is maintaining possession of the Vehicle to continue perfection of its possessory lien, Defendant is taking post-petition action to 'create, perfect, or enforce' a lien on property of the estate based on a prepetition debt in violation of § 362(a)(4).").

For all of the reasons stated above, the court finds that the Amended Complaint states a claim for relief under 11 U.S.C. § 362(a)(4).  The motion to dismiss will be denied as to Count II.

### 4.  The Amended Complaint states a claim for relief in Count III

The City asserts that Count III should be dismissed because the Amended Complaint fails to allege a plausible claim for relief that it violated the stay of "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title[.]"

As with Counts I and II, the City first contends generally that Count III "simply recite[s] the statutory language and fail[s] to allege plausible claims."  Motion, ¶ 28.  *See Jones*, 657 B.R. at 259.  And again, as with Counts I and II, the allegations in the entirety of the Amended Complaint go beyond mere recitation of the statutory language.

Second, the City argues with respect to Count III that this court should interpret *Fulton* to require that the Amended Complaint allege an affirmative act that alters the status quo.  Again, the court will assume that the City's position is correct and that *Fulton's* holding applies to § 362(a)(6).  The question, therefore, is whether Butler plausibly alleged an alteration of the status quo that the court could reasonably infer to be an act to collect, assess, or recover a prepetition claim against her.

19

The City does not deny that the Amended Complaint alleges in paragraph 14 that "defendant City demanded, as a condition for release of the motor vehicle, payment from plaintiffs on pre-petition debt owed to defendant City in the amount of $2,600." It could not be more plain that this is an allegation of an act to collect a prepetition claim. The City's argument, however, is that "[t]his allegation is too vague for Butler to state a plausible claim[.]" Second Motion, ¶ 42. The Amended Complaint does not refer specifically to Butler or Jackson, only to "plaintiffs."

The court does not find this allegation to be too vague. It refers to both plaintiffs. The court can draw the reasonable inference that the City made the demand of both Butler and Jackson, which would support Butler's claim for relief.

For all of the reasons stated above, the court finds that the Amended Complaint states a cause of action under 11 U.S.C. § 362(a)(6). The motion to dismiss will be denied as to Count III.

## IV.    CONCLUSION

Having reviewed the Amended Complaint, the Second Motion and the briefs filed and arguments made by the parties, the court concludes that the Second Motion is not an improper successive motion to dismiss, the court does not lack subject matter jurisdiction over the Amended Complaint, and the Amended Complaint states a claim for relief in Counts I, II and III. The court will enter an order consistent with this Memorandum Opinion.

Date:   July 24, 2025

_____
DAVID D. CLEARY
United States Bankruptcy Judge

20